**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| Cockett Marine Oil US, Inc., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No.: 24-cv-1440 |
| v. | § | |
| | § | IN ADMIRALTY, Rule 9(h) |
| Bravo Global Supply LLC, | § | |
| | § | |
| Defendant, | § | |
| | § | |
| and | § | |
| | § | |
| Wells Fargo Bank, N.A., | § | |
| Manson Construction Co., | § | |
| | § | |
| Garnishees. | § | |

**VERIFIED COMPLAINT WITH REQUEST FOR ISSUE OF
PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT**

Cockett Marine Oil US, Inc. ("Cockett") brings this action against Bravo Global Supply LLC ("Bravo") *quasi in rem* pursuant to Supplemental Rule B for Certain Admiralty and Maritime Claims, requesting the issue of process of maritime attachment and garnishment including against Garnishees and states as follows:

**Jurisdiction and Venue**

1.      This is an action within this Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and is an admiralty or maritime claim within Fed. R. Civ. P. 9(h).

2.      Venue is proper in this District because Garnishees can be found including with their resident agents this District and therefore Defendant's property also is located in this District.

3.      Defendant Bravo cannot be found in this District within the meaning of Supplemental Rule B.  Specifically, Bravo has no officers, owners, managers, or other affiliates which are residents of this District or which have any of their offices in this District.

4.      Cockett brings this action for payment of amounts due and owing from Bravo.

## Parties

5.      Plaintiff Cockett Marine Oil US, Inc. is a corporation incorporated under the laws of Delaware and is a seller of marine fuels ("bunkers") for provision to ocean-going vessels.

6.      Defendant Bravo Global Supply LLC is a disabled veteran-owned limited liability company (SDVOSB) that was organized under the laws of Texas but as of June 10, 2024, long after Cockett's sale to Bravo, now claims to be organized under the laws of Florida.  Bravo is or was a re-seller of bunkers.

7.      Garnishee Wells Fargo Bank, N.A. is a bank with its resident agent located in Austin in this District which, on information and belief as detailed below, Cockett reasonably believes holds accounts or property of and/or owing to Bravo.

8.      Garnishee Manson Construction Co. is a company organized under the laws of the State of Washington, with its resident agent located in this District and business office in Houston which, on information and belief as detailed below Cockett, reasonably believes holds accounts or property of and/or owing to Bravo.

## Facts

9.      In August 2023, Bravo contracted with Cockett for the purchase of bunker fuels that Bravo would then resell.

10.     The confirmation notified Bravo that Cockett's Terms and Conditions of Sale ("Terms") applied to the sale of the subject bunkers. Those Terms state that payment is due 45 calendar days from the date of delivery. They further provide that "an interest charge of 2 (two)

percent per month pro-rated on a daily basis and compounded from the due date until receipt by the company of sufficient cleared funds" would be incurred for late payments.  The Terms provide further that Cockett may recover its attorneys' fees and costs of collection from Bravo, if not paid.

11.     On September 7, 2023, Bravo purchased 39,995.65 gallons of bunkers and related products ("Bunkers") from Cockett, which Bravo then resold and supplied to the M/V CHALLENGER, IMO 9824227 (the "Vessel"). The Vessel was then owned by Edison Chouest Offshore ("ECO").

12.     On September 20, 2023, Cockett issued an invoice to Bravo for the Bunkers, plus the barge fee for the delivery of the products to the Vessel, in the amount of $193,587.06. Bravo promised to pay Cockett for the Bunkers by October 23, 2023.

13.     Bravo invoiced ECO for the Bunkers it resold. ECO paid Bravo, including for the Bunkers, in November 2023.

14.     Bravo, however, failed to pay Cockett for the Bunkers and Bravo concealed from Cockett that ECO had paid Cockett for the Bunkers.

15.     To date, Bravo has not paid Cockett's invoice. As of the present date, contractual interest has accrued on the amount due to at least $28,000.

16.     Cockett contacted Chris Brooks, owner of Bravo, on multiple occasions regarding the late payment/overdue invoice. Mr. Brooks has offered multiple excuses for Bravo's non-payment of Cockett's invoice. On November 1, 2023, Mr. Brooks told Cockett that ECO's owner complained that the price was too high – not Cockett's problem – and hadn't paid Bravo. Payment to Cockett was not contingent on Bravo being paid by ECO.

17.    Soon after this, however, ECO as stated above paid Bravo, but Bravo, by Chris Brooks, did not reveal this to Cockett.  Instead, Bravo used the money to pay other expenses and disbursements.

18.    In December 2023, Mr. Brooks sent an e-mail to Cockett advising that he had a meeting with ECO in which ECO said it had implemented a new accounting system in November that caused problems with their payment to Bravo – yet, in February 2024, he confirms that ECO paid Bravo in November.  Bravo, however, did not then pay Cockett.

19.    In March 2024, Mr. Brooks told Cockett that he was selling his personal home in Texas and would use the proceeds toward paying Bravo's debt to Cockett.  Mr. Brooks did, indeed, sell his home – and on or about April 23, 2024, bought another one with his wife at Santa Rosa Beach (near Tallahassee), Florida using the proceeds of the sale and incurring further mortgage debt.  Mr. Brooks did not reveal this to Cockett.

20.    In response to a call from counsel, during which Mr. Brooks also said he was still working to sell his Texas home and pay Cockett, Bravo remitted $5,000 on May 6, 2024. The money was paid from Bravo's Wells Fargo account, which Bravo originally had opened in Texas.

21.    After Bravo sent the $5,000 on May 6, 2024, but did not pay anything more, Cockett learned that Chris Brooks had sold his home in Texas and bought one at Santa Rosa Beach, Florida – not paying Cockett as he had promised.  Cockett, by counsel, confronted Chris Brooks about the deception.  Chris Brooks admitted that he had used the money from the Texas home sale (which had occurred on or about April 23, 2024) to buy a home with his wife in Santa Rosa Beach, Florida.

22.    Cockett therefore shortly afterwards, May 30, 2024 brought suit against Bravo in the United States District Court, District of Delaware, *Cockett Marine Oil US, Inc. v. Bravo*

*Global Supply LLC et al*, Civil Action No. 1:24-cv-00640-MN (the "Delaware Action"), including for the issue of a maritime garnishment writ to Wells Fargo.[1]

23.    After Cockett filed suit, the U.S. District Court, District of Delaware, issued a 21 day summons to Bravo, and Cockett on June 8, 2024 had Chris Brooks, as owner of Bravo, personally served with the summons and complaint.  Cockett also, on May 31, 2024, served on Wells Fargo in Delaware, the maritime garnishment writ which that Court issued to Wells Fargo.

24.    Unknown to Cockett until much later, however, after Cockett on June 8, 2024 personally served Chris Brooks with the Delaware summons and complaint (directed to Bravo as a Texas LLC), Chris Brooks on June 10, 2024 separately incorporated another same-as-the-Texas/ defendant named "Bravo Global Supply LLC" in Florida.  Bravo now claims that this is the successor corporation to Bravo/Texas and that Bravo is no longer a Texas LLC.  Mr. Brooks is no longer in Texas and no longer available for service there as resident agent or owner of Bravo, Bravo presently lists its office ( see https://www.bravoglobalsupply.com/industries-served/ ) at Santa Rosa Beach, Florida .

25.    Wells Fargo, in its response to the Delaware U.S. District Court writ and complaint, responded to the writ that it is holding $291,587.06 as demanded by Cockett.

26.    After the Wells Fargo writ was served, a company called Nalex Energy, LLC ("Nalex") moved in the U.S. District Court Delaware to vacate the writ, claiming that the money in the Bravo Wells Fargo account belongs to Nalex.  Nalex also had sold bunkers to Bravo; Bravo had sold them to Garnishee here, Manson Construction.  Bravo received checks from Manson

---

[1]    The current docket of the Delaware Action is on CM/ECF at https://ecf.ded.uscourts.gov/cgi-bin/iquery.pl?117223717298291-L_1_1-0-4919123-pty-pla%20%20%20%20%20%20-plaintiff

Construction and deposited them into Bravo's Wells Fargo account, both Bravo and Nalex claiming that Bravo had pledged the money from the checks, once negotiated, to Nalex.

27.     Cockett opposes the motion to vacate including because the Wells Fargo account terms prohibit transfer of the account to a third party.  The funds continue to belong to Bravo, including because Wells Fargo would require Bravo, as account owner, to either issue a check or authorize wire of the funds, as account owner, to Nalex.

28.     Bravo defaulted on the 21 days summons served personally on Chris Brooks for Bravo in Florida; the U.S. District Court entered default; Bravo, on October 21, 2024, answered the complaint but failed to vacate the default; Bravo then November 13, 2024 moved to vacate the default and also the writ served on Wells Fargo.  Cockett opposes the Nalex motion and will timely oppose the Bravo motions.

29.     In its motion to vacate the writ served on Wells Fargo, Bravo has claimed that Delaware law follows something called the "separate entity rule" which does not allow the writ to remain in place to hold Bravo's Wells Fargo account.  At the same time, however, Bravo says that it both opened the Wells Fargo account in Texas and deposited the checks from garnishee Manson Construction in a Wells Fargo branch in Texas.

30.     Bravo, in October, 2024, retained bankruptcy counsel and informed Cockett of Bravo's imminent intention to file for bankruptcy.

31.     Cockett brings this action including to assure that the Bravo's Wells Fargo account continues to remain subject to a writ of maritime garnishment issued in favor of Cockett for the amounts that Bravo admits that it owes Cockett, and overall to secure what Bravo has admitted in the Delaware U.S. District Court action and otherwise that it owes Cockett.

32.     No payments from Bravo have been received since the $5,000 payment above. Further, contractual interest and contractual attorneys' fees have continued to accrue, including because of Bravo's continued delay of payment and legal fees which Bravo have caused Cockett

to incur.  Cockett demands at least the amounts demanded below for the Bunkers invoice of $193,587.06, less the $5,000 payment, plus accrued and accruing contractual interest for the unpaid Bunkers, contractual attorneys' fees and costs, as demanded below.

## Specific Allegations – Garnishees

### Wells Fargo Bank, N.A.

33.    Wells Fargo, as above, has admitted that it holds at least $291,587.06 in the Bravo Wells Fargo account.  Bravo likely continues to use the Wells Fargo account for any operations that it may continue to have.  Cockett, therefore, reasonably believes that Wells Fargo has accounts / funds due and owing to Bravo.

### Manson Construction Co.

34.    On May 30, 2024, Manson Construction Co. issued a check for over $400,000 to Bravo for fuel that Bravo sold to Manson Construction.  Manson Construction also regularly enters into contracts requiring purchases from set-aside contractors such as Bravo, and so Cockett, therefore, reasonably believes that Manson has accounts / funds due and owing to Bravo.

## Count I – Breach of Maritime Contract

35.    Cockett incorporates the above paragraphs as if fully set forth herein.

36.    Bravo breached its maritime contract with Cockett as set out above.  Despite repeated demand, Cockett remains unpaid.

37.    Cockett therefore demands judgment, as set out more fully below.

## Count II – Maritime Attachment and Garnishment (Rule B)

38.    Cockett incorporates the above paragraphs as if fully set forth herein.

39.    Cockett seeks issue of process of maritime attachment so that it may obtain payment for the amounts due to it.

40.    No security for Cockett's claims has been provided by Bravo or anyone acting on its behalf.

41.    Bravo cannot be found within this district within the meaning of Rule B, but is believed to have, or will have during the pendency of this action, property and/or assets in this jurisdiction consisting of cash, funds, freight, hire, and/or credits in the hands of Garnishees in this District.

## **Prayer for Relief**

WHEREFORE, Cockett prays:

A.    That, in response to Count I, process of maritime attachment be issued to garnish and attach property of Bravo in the principal amount of at least **$328,587,06** (invoice of $193,587.06, less the $5,000 payment, plus at least $40,000 presently accrued contractual interest)), plus further interest, and all attorneys' fees and costs of these and related proceedings of at least $100,000);

B.    That in response to Count II, since Defendant cannot be found within this District pursuant to Supplemental Rule B, this Court issue an Order directing the Clerk to issue Process of Maritime Attachment and Garnishment pursuant to Rule B attaching all of Bravo's tangible or intangible property or any other funds held by Garnishees up to the amount of at least the amount demanded herein to secure Bravo's claims, and that all persons claiming any interest in the same be cited to appear and, pursuant to Supplemental Rule B, answer the matters alleged in the Verified Complaint;

C.    That, as provided in Supplemental Rule B, such person over 18 years of age be appointed as moved for herein, pursuant to Supplemental Rule B and Fed. R. Civ. P. 4(c) to serve Process of Maritime Attachment and Garnishment;

D.     That, pursuant to Supplemental Rule B(a)(b), the Clerk issue supplemental

process enforcing this Court's Order to issue the Rule B writs upon application without further

Court order; and

E.     That this Court award Cockett such other and further relief that this Court deems

just and proper.

Dated: November 22, 2024

 /s/ Scott Wiehle                                    /s/ J. Stephen Simms
Scott Wiehle                                         J. Stephen Simms
State Bar No. 24043991                               (*pro hac vice* pending)
Joseph D. Austin                                     Simms Showers LLP
State Bar No.: 24101470                              201 International Circle, Suite 230
Joseph.austin@kellyhart.com                          Baltimore, Maryland 21030
KELLY HART & HALLMAN, LLP                            410-783-5795
201 Main Street, Suite 2500                          jssimms@simmsshowers.com
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Telecopy:   (817) 878-9280

Counsel to Cockett Marine Oil US, Inc.

## <u>VERIFICATION</u>

I am a Principal of the law firm Simms Showers LLP, of counsel to Cockett Marine Oil US, Inc. ("Cockett").

The facts alleged in the foregoing complaint are true and correct to the best of my knowledge and information based upon the records of Cockett made available to me by Cockett. Cockett's authorized officers are not readily available in this District to make verifications on Cockett's behalf.  I am authorized to make this verification on Cockett's behalf.

I further certify that, pursuant to Supplemental Rule B, I caused a search to be made of electronic records and Directory Assistance for addresses and telephone numbers in this District. There is no general or resident agent authorized to accept service of process for defendant Bravo in this District.

Pursuant to 28 U.S.C. § 1746(1), I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 22, 2024.

<u>/s/ J. Stephen Simms</u>
J. Stephen Simms
Simms Showers LLP
201 International Circle, Suite 230
Baltimore, Maryland 21030
Tel:  410-783-5795
Email: jssimms@simmsshowers.com